UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATE OF AMERICA,

               Plaintiff,                  Criminal No. 3:09-cr-396

     v.

                                    (Judge Caputo)

BRANDON PIEKARSKY, and           Electronically filed

DERRICK DONCHAK

               Defendants.

## GOVERNMENT'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO REVOKE DETENTION ORDERS AND TO ESTABLISH CONDITIONS OF RELEASE

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA:

The government, through Assistant Attorney General Thomas Perez, United States Attorney Dennis C. Pfannenschmidt, and Trial Attorneys Eric L. Gibson and Myesha Braden, opposes the revocation of the detention orders issued by the United States Magistrate Judge on December 22, 2009, because no condition or combination of conditions will reasonably assure the safety of the community and because the defendants represent a serious risk to obstruct justice and undermine the integrity of the court system. In support of the government's opposition to the defendants' release, the government respectfully avers the following:

## I. <u>INTRODUCTION</u>

On December 10, 2009, a federal grand jury indicted defendants BRANDON PIEKARSKY and DERRICK DONCHAK for a civil rights violation in the racially motivated killing of L.R. Defendants are charged with violating Title 42, United States Code, Section 3631 with death resulting. The maximum term of punishment is life imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment.

Defendant DERRICK DONCHAK is also charged with three additional counts for conspiring to obstruct justice. In Count Two, defendant DONCHAK faces an additional five years imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment for violating Title 18, United States Code, Section 371 (Conspiracy). In both Counts Three and Four, defendant DONCHAK faces an additional twenty years imprisonment, three years supervised release, a $250,000 fine, and a $100 special assessment. Count Three alleges a violation of Title 18, United States Code, Section 1519, for defendant DONCHAK's role in obstructing justice by falsifying police reports in order to mislead investigators about the true nature of the assault on L.R. Count Four alleges another violation of Title 18, United States Code, Section 1519, in which DONCHAK is charged with aiding and abetting the concealment or destruction of shoes worn during the assault on L.R.

Defendant PIEKARSKY'S role in the obstructive conduct is detailed in the General Allegations, Manner and Means of the Conspiracy, and Overt Acts as averred in Count Two of the indictment.

# I. <u>BACKGROUND</u>

On July 12, 2008, following a block party in Shenandoah, Pennsylvania, a group of male football players, fatally beat L.R.[1]  The group, including defendant BRANDON PIEKARSKY, defendant DERRICK DONCHAK, Participant # 1, and Participant # 2, and others came upon L.R. in a public park.  Participant # 2, began to make statements to L.R.'s companion, such as "Isn't it a little late for you guys to be out?" and "You should get out of this neighborhood!"  As L.R. and his companion left the park, they walked past the football players.  Participant # 2 yelled, "Get your Mexican boyfriend out of here."  Four members of the original group of six, specifically defendant PIEKARSKY, defendant DONCHAK, Participant # 1 and Participant # 2, then doubled back and began to yell various racial slurs at L.R., including:  "Spic," "Fucking Spic," and "Go back to Mexico."  Defendant PIEKARSKY then rushed toward L.R., kicked him in the leg, and then tackled him.  As defendant PIEKARSKY got up from tackling L.R., defendant PIEKARSKY fell backward and defendant DONCHAK–who held a piece of heavy metal, known as a "fist pack," within his palm--began to beat L.R. about the face, head and mid-section.

Although L.R. managed to get up, defendant PIEKARSKY, defendant DONCHAK, and their cohorts simultaneously attacked him and began punching and kicking him, causing him to fall back to the ground.  As L.R.'s companion begged them to stop, a neighbor, who was drawn from her bed by the sound of the blows to L.R.'s body, called 911 and reported that males were repeatedly kicking L.R. as he lay on the ground.

---

[1]  The group had been ejected from the block party after defendant BRANDON PIEKARSKY had threatened to fight an older male.  PIEKARSKY removed his shirt and approached the male until he was restrained by Participant # 1 and his other friends.

As the beating continued, two of L.R.'s friends arrived on the scene.[2]  One of them, a Hispanic male, ran to L.R.'s aid and placed himself between L.R. and the group of attackers, giving Ramirez time to regain his footing.  Although defendant PIEKARSKY, defendant DONCHAK and Participant # 1 turned to walk away, Participant # 2 lagged behind the others.  L.R., still disoriented, but now on his feet, began to fight Participant # 2.  As Participant # 2 and L.R. fought, Participant # 1 punched L.R. on the side of his head, causing him to fall backward and hit his head on the street.  L.R.'s friend pushed Participant # 1 away from L.R., but as L.R. lay motionless on the ground, defendant PIEKARSKY kicked L.R. in the head as if kicking a field goal.  As defendant PIEKARSKY left L.R. lying in the street, he yelled to L.R.'s friends, "You bitch!  Tell your fucking Mexican friends to get the fuck out of Shenandoah or you'll be laying next to him."

As the group ran off together, L.R. lay on the ground convulsing and "foaming at the mouth."   He was eventually transported to St. Catherine's Medical Center where the decision was made to transport him via Life-Flight Helicopter to Geisinger Medical Center for surgery.  L.R. remained comatose until he died on July 14, 2008.  The medical examiner ruled that the cause of death was blunt force trauma to the head and that the manner of death was homicide.

While they were attempting to flee the scene of the attack, defendant PIEKARSKY, defendant DONCHAK, and their friends were pursued by another 911 caller and a Hispanic male named Diego Tovar-Alvarez.[3]  Tovar-Alvarez was at home when L.R. first encountered the

_____

[2]  Just prior to the physical assault, L.R. had used his cell phone to contact friends for assistance, including Diego Tovar-Alvarez.

[3]  Diego Tovar-Alvarez was subsequently arrested on or about August 15, 2008 by Shenandoah Police Captain Jamie Gennarini.  He was eventually turned over to immigration

defendants. After receiving L.R.'s cellular telephone call for assistance, Tovar-Alvarez tucked a bb gun into his waistband and ran about six blocks in the direction of the park to aid L.R.

Tovar-Alvarez arrived too late to help L.R., but he stopped the defendants and their friends in the park and demanded to know who had attacked L.R. As Tovar-Alvarez confronted defendant PIEKARSKY, defendant DONCHAK, and the other assailants, the 911 caller who had been running behind Tovar-Alvarez made another call to the Schuylkill County Communications Center requesting police assistance. When Shenandoah police officers Jason Hayes and Bill Moyer arrived, Tovar-Alvarez ran from the scene and tossed the bb gun away.

Officer Moyer's son was a high school freshman who played on the same team with the individuals who had just beaten L.R. Officer Jason Hayes was dating the mother of defendant BRANDON PIEKARSKY and also knew all of the individuals involved in the beating. After a brief conversation, Officer Hayes told defendant PIEKARSKY to get into the police car, and drove him back to the scene of the assault on L.R. While there, defendant PIEKARSKY ran into a friend of his and said, "We got in a fight with some Spic."[4]

The other assailants went to defendant DONCHAK's house on foot. At DONCHAK's home, the football players told others, including defendant DONCHAK's parents, about the fight with L.R. While in the garage, defendant DONCHAK, Participant # 1, Participant # 2, and

---

officials, and the Federal Defender for the Middle District of Pennsylvania was appointed to represent him on November 20, 2009, in *United States v. Diego Tovar-Alvarez*, 3:09-CR-352.

[4]    While Hayes was talking to defendant PIEKARSKY at the scene, Lt. Moyer approached PIEKARSKY's friend and commented, "that guy they beat up was pretty bad." Officer Hayes then asked PIEKARSKY's friend if he was involved in the assault on L.R. PIEKARSKY's friend replied that he had not been present, and Officer Hayes discontinued the conversation.

others discussed the assault on L.R. Defendant DONCHAK retrieved and loaded a shotgun. DONCHAK brandished the weapon, announcing that he would be prepared if there was any retaliation from the Hispanic community. Defendant DONCHAK then called defendant PIEKARSKY on PIEKARSKY's cell phone.[5] During the conversation, defendant PIEKARSKY told DONCHAK and Participant # 1 that he had already told the police what had happened.[6] Shortly after the telephone call, defendant PIEKARSKY arrived at defendant DONCHAK's house.

Sometime after defendant PIEKARSKY arrived, PIEKARSKY's mother, Tammey Piekarsky, showed up at defendant DONCHAK's house. She told the football players that she had been in touch with her boyfriend, Officer Hayes,[7] and that the assailants needed to get their

---

[5] The service contract for the cellular telephone used by defendant PIEKARSKY was in the name of Patrolman Jason Hayes.

[6] No one on the Shenandoah Police Department memorialized the statement by defendant BRANDON PIEKARSKY which he made before L.R. died and before the other participants joined PIEKARSKY in crafting a false story minimizing the assault and eliminating any reference to the brutality involved. No one on the Shenandoah Police Department ever disclosed in official reports or to local prosecutors that PIEKARSKY provided information to any of its officers prior to its formal investigation in which self-serving and false versions of the assault were recorded. During the Shenandoah police investigation of the assault on L.R., Shenandoah police officers intimidated two eyewitness during their interviews at the station. The eyewitnesses reported that when they were interviewed by Officer Jason Hayes at the Shenandoah Police Station, a military recruiting poster depicting Uncle Sam was hanging in the office of Chief Matthew Nestor. On the poster, added in handwriting beneath the pre-printed phrase "I Want You," someone had scrawled, "to speak English or die."

[7] Defendant PIEKARSKY and his cohorts, including his mother, defendant DONCHAK, Officer Jason Hayes, Chief Matthew Nestor and Lt. William Moyer were engaged in obstructive activity beginning almost as soon as the police were called upon to respond to the scene of the attack upon L.R. The government has obtained and analyzed records for the cellular telephone activity in the hours immediately following the assault on L.R. which disclosed a number of text messages and telephone calls amongst them.

stories straight because "Jason got word from the paramedics that this guy [L.R.] is not doing good and probably won't make it, if this guy dies, this is a homicide." The football players discussed the assault amongst themselves in the garage. Shortly afterwards, Tammey Piekarsky told her son to go home. Before any of the football players left, however, they concocted a version of the incident where they would "sugarcoat" the fight by not mentioning the kicking and downplaying the racial language used during the assault. During this discussion, BRANDON PIEKARSKY said that when he kicked L.R., his shoe went flying off.

After the meeting at defendant DONCHAK's house, Participant # 1 returned to his home. The next morning, Participant # 1 received a telephone call directing him to come to defendant PIEKARSKY's house. When he arrived, Participant # 1 saw L.R.'s attackers and most of the parents of the individuals involved in the attack. Tammey Piekarsky again told Participant # 1 to "get his story straight," and explained to the football players that investigators would pick apart their story over discrepancies and small details. The football players, including defendant PIEKARSKY, went into the backyard to discuss the cover story while the adults remained in the front of the house. During the conversation amongst the football players, defendant PIEKARSKY admitted to kicking L.R., and then placed his forefinger in front of his mouth and said, "Shhhhhhh." One of the participants in the conversation understood this to mean that defendant PIEKARSKY was instructing him not to disclose to anyone that PIEKARSKY had delivered the final kick to L.R.'s head. Defendant DONCHAK advised the group to get rid of the sneakers they wore during the incident with L.R.

Participant # 1 remained behind with defendant BRANDON PIEKARSKY after the others had left the Piekarsky home. When Participant # 1 finally left, he saw Officer Hayes on

the front porch wearing a police T-Shirt, jeans, and carrying a radio.  Before he left, Tammey Piekarsky told Participant # 1 that he would not have to give a statement to the Shenandoah police until his father came home.

Shortly thereafter, Shenandoah Officer Bill Moyer arrived at Participant # 1's home wearing a police T-Shirt.  Moyer repeated to Participant # 1 that he did not have to talk with police until his father came home, and then said, "Talk to your friends, you know what I'm saying."  Participant # 1 replied in the affirmative.  Moyer asked him if he had already spoken with the others involved in the assault, and Participant # 1 replied, "yeah," to which Officer Moyer responded, "Good luck, buddy," and left.

At the post-assault meetings and afterwards, defendants PIEKARSKY, DONCHAK and their friends, some of the parents, and several of the Shenandoah police officers participated in a scheme to conceal the true nature of the assault on L.R., and especially defendant PIEKARSKY's culpability, from state and federal law enforcement authorities. The group concocted and promoted a false account of the incident by downplaying the racial motivation and the brutal violence of the attack, and omitted any reference to PIEKARSKY's final kick to the head of L.R. as he lay on the ground.  The assailants and their friends recounted this false version in official interviews conducted in the presence of Lt. Moyer, a party to the cover-up.  Lt. Moyer also advised at least one family of one of the assailants to destroy physical evidence, e.g., shoes, in an effort to thwart the criminal investigation.

Subsequently, Participant # 1's sister received information that he should get rid of the shoes that he wore the night of the assault.[8] When Participant # 1 arrived at his arraignment in state court with defendants PIEKARSKY and DONCHAK, he observed that PIEKARSKY conspicuously wore a pair of flip-flops, while DONCHAK wore obviously brand new sneakers.

Even prior to the killing of L.R., defendant PIEKARSKY's friend and accomplice, defendant DONCHAK told friends and acquaintances that he "hates Mexicans." Friends of L.R.'s assailants reported that DONCHAK often complained about "Spics" being "all over the place" in Shenandoah and that DONCHAK and his cohorts all used racist language when referring to Hispanics.

On or about May 20, 2008, around 9p.m., defendant DONCHAK was involved in an incident near a restaurant named Little Venice in Shenandoah. Two Hispanic males were in a car and were confronted by a group of white males, including DONCHAK. Defendant DONCHAK and the white males approached the car containing the Hispanic males and were shouting "Go back to Mexico you fucking Mexicans," "You fucking wetback," and, "Dirty ass Mexican." When one of the white males got close to the passenger-side doorway, one of the Hispanic males grabbed him by the shirt and blows were exchanged as some additional white males tried to drag the Hispanic male from the car. Defendant DONCHAK had a something long and metal in his hand and started to hit the Hispanic males' car with it, denting the vehicle. The Hispanic driver

---

[8] During the initial investigation while still acting as the lead investigator for the Shenandoah Police Department, Lt. Moyer advised Participant # 2's parents to dispose of the sneakers he wore during the assault on L.R.. Between his arraignment on state charges and his preliminary hearing in the Schuylkill County Court of Common Pleas, defendant PIEKARSKY was detained in the Schuylkill County jail, where Tammey Piekarsky brought the defendant a new pair of sneakers.

grabbed a bat from inside his car to defend himself and hit a car belonging to one of the white males. The incident broke up, and the Hispanic male went to the police station where Captain Jamie Gennarini refused to include DONCHAK's name on the report and refused to investigate allegations of ethnic intimidation. Both the Hispanic male driver and some of the white males were charged with minor offenses, and restitution arrangements were made for the property damage.

Later that same year, according to multiple witnesses, in the summer of 2008, sometime prior to the assault on L.R., defendant DONCHAK downloaded a racist song from a scene in the movie "American History X" and on at least one occasion played it at a loud volume for others to hear while riding around town in his car.[9] Defendant BRANDON PIEKARSKY, among others, was riding with DONCHAK while the racist music was blaring from the car. Following the fatal assault on L.R, defendant DONCHACK wore a "Border Patrol" T-shirt to a Halloween party.

_____

[9]  The song downloaded and played by defendant DONCHAK while PIEKARSKY and others accompanied him is the racist re-interpretation of the Battle Hymn of the Republic by Johnny Rebel titled "The White Man Marches On." The lyrics include the following: "My eyes have seen the glory of the tramplin [sic] at the zoo, We washed ourselves in niggers blood and all the mongrals too, We're taking down the zog machine jew by jew by jew, the white man marches on." Where defendants are charged with a racially motivated crime, evidence of their racist conduct and statements are relevant and admissible at trial to show discriminatory purpose and intent. United States v. Pospisil, 186 F.3d 1023 (8th Cir, 1999) (trial court did not abuse discretion by denying severance where government properly introduced evidence that codefendant abused his ex-girlfriend and owned a sign with the phrase "Official Runnin' Nigger Target" in order to demonstrate cross-burning was racially motivated); United States v. Dunnaway, 88 F.3d 617 (8th Cir. 1996) (evidence that white defendant did not like black people, commonly used racial epithets when referring to blacks, and believed interracial relationships were wrong was admissible in prosecution for violation of 18 U.S.C. § 245); O'Neal v. Delo, 44 F.3d 655, 661 (8th Cir.), *cert. denied*, 516 U.S. 843 (1995) (question of racial animus as a motive for victim's murder was an issue in the trial and therefore defendant's membership in the Aryan Brotherhood was relevant); United States v. Price, 464 F.2d 1217 (8th Cir. 1972) (use of vulgar expletives and direct racial slurs by defendant admitted to show specific intent to violate 18 U.S.C. § 245).

Additionally, the night before they fatally beat L.R., all four of L.R.'s assailants were involved in a car chase with another Hispanic male after striking the male's car with a football. The Hispanic male briefly pursued PIEKARSKY, DONCHAK, and their friends after the football players drove off in DONCHAK's car.

Additionally, defendant DONCHAK has committed multiple disciplinary infractions while incarcerated in the Schuylkill County Prison. So far, he has spent 70 days of his sentence in solitary confinement as a result of his behavior. DONCHAK's first disciplinary infraction on August 5, 2009, also involved PIEKARSKY.

## II. **ARGUMENT**

The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. The statute provides a rebuttable presumption that certain serious charges will result in pretrial detention, and provides for a detention hearing in serious cases involving factors set forth in 18 U.S.C. § 3142(f). Among the factors contemplated by the statute, at least three are implicated in this case. Defendants PIEKARSKY and DONCHAK are accused of a crime of violence; both face a maximum sentence of life imprisonment; and there is a serious risk that the defendants will obstruct or attempt to obstruct justice if they are not detained. When a case involves any of these factors, upon motion of the government, the judicial officer must hold a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community. The government so moved, and the required detention hearing was held before United States Magistrate Judge Malachy E. Mannion on December 22, 2009.

At the detention hearing, the United States Magistrate Judge heard proffers from the government and defense counsel, heard testimony from witnesses on behalf of defendant DONCHAK, reviewed the indictment and a pretrial services report prepared by a probation officer, and considered the arguments of legal counsel. Based on this well-developed record, Judge Mannion then weighed the relevant factors set forth in § 3142(g), including: (1) the nature and circumstances of the offense charged (and whether the offense is a crime of violence); (2) the weight of the evidence against the defendants; (3) the history and characteristics of the defendants; and (4) the nature and seriousness of the danger to any person or the community posed by the defendants' release. Based on the record, the United States Magistrate Judge correctly determined that there was no condition or combination of conditions of release that would reasonably assure the safety of others and the community and prevent additional obstructive conduct by the defendants.

The defendants now move this Court to review the Magistrate Judge's ruling, pursuant to 18 U.S.C. § 3145(b). The decision of the magistrate judge is reviewed *de novo*. *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). In its *de novo* review, the District Court must determine by a "preponderance of the evidence" whether the government has established that no condition will reasonably assure the defendant's appearance at future court proceedings, and by "clear and convincing evidence" whether the government has established that no release condition will reasonably assure the safety of others and the community. *United States v. Cisneros,* 328 F.3d 610, 616 (10th Cir. 2003)(internal citations omitted). This Court may affirm the magistrate's decision solely based upon the record before the magistrate and the magistrate's findings, or it may supplement the magistrate's order with additional findings and evidence. The

District Court is "as unfettered as it would be if [it] were considering whether to amend its own action." *United States v. Fortna*, 769 F.2d at 250, quoting *United States v. Thibodeaux*, 663 F.2d 520, 527 (5th Cir. 1981).

The record available for review by the District Court also includes the government's comments and opinions about the nature of the offense and the weight of the evidence. The District Court, in evaluating the Magistrate Court's detention order, may consider, among other things, "the opinion of the prosecutor as to the weight of the evidence against the accused." *Tunnell v. Wiley*, 369 F.Supp. 1260, 1266 (E.D. Pa. 1974) ("among the evidence appropriate to [a bail] inquiry is the opinion of the prosecutor as to the weight of the evidence against the accused"). Here, the evidence against both defendants is strong.

As demonstrated by the recitation of the factual background above, both defendants represent a threat to the community and to the integrity of the court system. Neither individual is a stranger to violence, and both have engaged in threatening behavior prior to the deadly assault on July 12, 2008. Both PIEKARSKY and DONCHAK engaged in significant obstructive conduct meant to frustrate any prosecution for their involvement in the fatal beating of L.R. Moreover, both defendants now seek to be released into the very homes that were used as meeting places in order to concoct their false cover story. PIEKARSKY's mother is named as a party to the conspiracy to obstruct justice, and DONCHAK's family hosted the first planning session in the garage of their home immediately following the fatal beating. Given this track record, there are no set of conditions of release that could ensure they would confine themselves to lawful behavior in the future. DONCHAK has already demonstrated a propensity to employ

weapons, and his father confirmed at the detention hearing the presence of at least four (4) firearms in the DONCHAK residence.

After hearing from witnesses, considering appropriate evidence, and weighing the relevant factors, Judge Mannion properly concluded that the government had established that pretrial detention was appropriate in this case. The District Court should affirm the Magistrate's ruling for the reasons provided by Judge Mannion and also because Probation has recommended that the defendants should be detained.

## IF THIS COURT DISAGREES WITH THE MAGISTRATE'S DETERMINATION, THE GOVERNMENT REQUESTS AN OPPORTUNITY TO SUPPLEMENT THE RECORD.

For the reasons set forth above, the record in this case is more than sufficient to justify the defendants' detention pending trial. However, if this Court disagrees, the government respectfully requests an opportunity to supplement the record and, if necessary, to present additional evidence at a hearing before the District Court.

Respectfully submitted this 30th day of December, 2009.

s/ *Eric L. Gibson*

Eric L. Gibson
Trial Attorney
United States Department of Justice
Civil Rights Division, Criminal Section

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Government's Brief in

Opposition was sent, by electronic filing and/or first class, postage prepaid mail, to:

James A. Swetz, Esquire
Cramer, Swetz & McManus, P.C.
711 Sarah Street
Stroudsburg, PA 18360

Counsel for defendant Brandon Piekarsky

William A. Fetterhoff, Esq.
Fetterhoff and Zilli
218 Pine Street
P.O. Box 1161
Harrisburg, PA 17108-1161

Counsel for defendant Derrick Donchak

/s/ Eric L. Gibson
ERIC L. GIBSON
Trial Attorney
Criminal Section, Civil Rights Division

Dated: December 30, 2009