**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 3:09-CR-396** |
| | : | |
| **v.** | : | **(Judge Caputo)** |
| | : | |
| **BRANDON PIEKARSKY** | : | |
| **DERRICK DONCHAK** | : | |


## RESPONSE OF THE UNITED STATES IN OPPOSITION TO DEFENDANTS' JOINT PRE-TRIAL MOTIONS


Comes now the United States of America (the "Government"), by and through

undersigned counsel, and files its OPPOSITION TO DEFENDANTS' JOINT PRE-TRIAL

MOTIONS.


In their Motions to Dismiss, the defendants argue that the Indictment is improperly pled

and that it violates the prohibition against double jeopardy. However, the four-count speaking

Indictment complies with Rule 7 of the Federal Rules of Criminal Procedure. Moreover, because

the federal prosecution does not fit within the so-called "Bartkus" exception to well-established

dual sovereignty principles, concerns of double jeopardy are invalid.


In their Motion *in Limine,* the defendants seek to exclude evidence of specific behavior

and speech that exemplifies the racist beliefs which precipitated the defendants criminal

behavior. However, exclusion of this evidence is improper where, as here, racial animus is an

1

element of a charged offense.[1]

For these reasons, as set forth more specifically below, the DEFENDANTS' JOINT PRE-TRIAL MOTIONS should be denied in their entirety.

## BACKGROUND AND PROCEDURAL HISTORY

### A. THE RACIALLY MOTIVATED BEATING-DEATH OF LUIS RAMIREZ

Luis Ramirez, a Mexican immigrant, was brutally attacked and beaten on July 12, 2008, in Shenandoah, Pennsylvania. A group of six high-school football players, including defendants Brandon Piekarsky and Derrick Donchak, happened upon Mr. Ramirez in a public park with a white female classmate of theirs. As he spotted her with Mr. Ramirez, Participant #2, began to make statements such as "Isn't it a little late for you guys to be out?" and "You should get out of this neighborhood!" To avoid further incident, Mr. Ramirez and his companion left the park and began walking down the street and away from the football players. As he walked away, Mr. Ramirez used his cell phone to send a text message seeking help from another young couple who had just dropped him off in the park only moments before his encounter with the football players. As Mr. Ramirez moved further away from the park, Participant #2 yelled to his companion, "Get your Mexican boyfriend out of here." At once, four members of the original group of six football players doubled back toward Ramirez and began hurling obscenities and racial slurs toward Mr. Ramirez. Specifically, defendants Piekarsky and Donchak, Participant #1 and Participant #2,

---

[1] The Government continues to provide full and complete discovery to the defendants and is in compliance with its obligations under the law. The Government's Opposition to Defendants' Motion to Compel will be addresses in a separate pleading.

screamed the words: "Spic," "Fucking Spic," and "Go back to Mexico."

As the others continued taunting Mr. Ramirez, defendant Piekarsky suddenly rushed toward him and kicked Mr. Ramirez in the leg. Defendant Piekarsky then tackled Mr. Ramirez, knocking him to the ground. Defendant Donchak –who had affixed a piece of heavy metal, known as a "fist pack", within his palm– began to strike blows against Mr. Ramirez's face and body with his weighted fist. As he attempted to get up from the ground, the defendants, Piekarsky and Donchak, joined by Participant #1 and Participant #2, simultaneously attacked Mr. Ramirez, wildly punching and kicking him, causing him to take cover on the ground. As his companion screamed and begged the assailants to stop beating Mr. Ramirez, Participant #2 withdrew from the attack. A neighbor, who had been pulled from her bed by the sound of the blows against Mr. Ramirez's body, called 911 and reported that she could see three people repeatedly kicking Mr. Ramirez as he lay helpless on the ground.

When Mr. Ramirez friends arrived on the scene, the male friend immediately ran to Mr. Ramirez's aid and attempted to end the beating by placing himself directly between Mr. Ramirez and defendants Piekarsky and Donchak and Participant #1. As he began to regain his footing and orientation, Mr. Ramirez struck out against Participant #2, who had remained directly near Mr. Ramirez. As Mr. Ramirez and Participant #2 fought, Participant #1 took a running start and threw punch that landed violently against the side of Mr. Ramirez's face, causing him to fall backward and hit his head on the macadam. Defendant Piekarsky then approached Mr. Ramirez, laying motionless on the ground, and planted one foot behind Mr. Ramirez's back while swinging the other foot directly into Mr. Ramirez's head, as if kicking a field goal. As the

female friend who had arrived on the scene –also a classmate of the football players– kneeled over Mr. Ramirez's body, defendant Piekarsky ran from the park, yelling, "You bitch! Tell your fucking Mexican friends to get the fuck out of Shenandoah or you'll be laying next to him."

After lingering in a comatose state for two days, Mr. Ramirez died on July 14, 2008. The medical examiner determined that the cause of death was blunt force trauma to the head.

## B.     THE STATE PROSECUTION OF DEFENDANTS PIEKARSKY AND DONCHAK

The initial investigation into the racially motivated beating of Luis Ramirez was conducted by the Borough of Shenandoah Police Department ("BSPD") in the hours and days immediately following the incident. After Mr. Ramirez died, the Schuylkill County District Attorney's Office (the "Schuylkill County DA") joined the BSPD in conducting the investigation. After becoming concerned that the BSPD had not properly conducted the initial investigation into Mr. Ramirez's death, the Schuylkill County DA took control of the investigation and excluded the BSPD from further involvement, relying upon its own detectives and the Pennsylvania State Police ("PSP").

On July 25, 2008, based on the results of the Schuylkill County DA's investigation, the football players who attacked Mr. Ramirez were arrested and detained on state murder charges. Defendant Piekarsky and Participant #1 were charged as adults with first, second and third-degree murder, ethnic intimidation and related charges. Ultimately, Piekarsky and Participant #1 agreed to waive their rights to decertification hearings seeking transfer to juvenile delinquency proceedings and agreed to be tried as adults in exchange for dismissal of the first and second-

degree murder charges.[2]  Defendant Donchak, who was eighteen at the time of the attack, was

charged with aggravated assault as a first-degree felony, ethnic intimidation, and related charges.

Participant #2 was charged in Juvenile Court with aggravated assault and related charges.

On April 7, 2009, Participant #1 entered a plea of guilty to a federal civil rights violation

and agreed to cooperate with the United States and the Commonwealth of Pennsylvania by

providing information concerning the unlawful activities of others.  Although not a signatory to

the plea agreement, the Schuylkill County DA agreed to move for dismissal of state charges

against Participant # 1 arising out of the racially motivated killing of Ramirez in exchange for his

cooperation.  Participant #1 subsequently testified against his cohorts in the state proceedings.

On May 1, 2009, after a week-long trial in state district court,  a jury acquitted defendant

Piekarsky of all charges except simple assault, a second degree misdemeanor.  Defendant

Donchak was also acquitted of the more serious charges, but was convicted of simple assault,

corrupting the morals of a minor –a misdemeanor of the first degree– and a summary offense of

providing alcohol to minors.

## C.    THE FEDERAL PROSECUTION

The Government began a federal investigation of the racially motivated beating death of

Luis Ramirez after being contacted by the Schuylkill County DA concerning allegations of

misconduct by the BSPD during the initial local investigation.  During the course of the federal

---

[2]  Had they not waived their rights to challenge being charged as adults, the defendants would have argued their cases were appropriate for transfer to juvenile court.  *See* 42 Pa.C.S. § 6302.

investigation that followed, Participant #1 began to cooperate with the Government and on March 31, 2009, in a sealed matter, Participant #1 was charged via Information with a federal civil rights crime, to which he pled guilty on April 8, 2010.[3] On December 10, 2010, at the conclusion of Government's investigation, defendants Piekarsky and Donchak were indicted in United States District Court on charges of violating 18 U.S.C. §§ 2, 371 and 42 U.S.C. § 3631. Defendant Donchak was also charged with violating 18 U.S.C. § 1519.

## ARGUMENT

## I. THE INDICTMENT IS PROPERLY PLED AND COMPLIES WITH RULE 7 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

In their Motions to Dismiss, defendants argue first that Count One of the Indictment fails to state an offense under 42 U.S.C. § 3631 because it does not allege that either defendant "had any knowledge of whether Luis Ramirez occupied a home or other dwelling in Shenandoah, Pennsylvania." (Def. Brief in Support at 4.) Next, they argue that Counts Two, Three and Four of the Indictment do not allege "that Derrick Donchak had any knowledge that the investigation being conducted . . . was a 'matter within the jurisdiction of the [FBI] or that he had any knowledge that he was acting . . .'in relation to . . .'such an investigation," and thus fail to state offenses under 18 U.S.C. §§ 371, 1519 and 2 (Def. Brief in Support at 5.) Both arguments must fail on the merits.

---

[3]     This Court issued a limited order unsealing the plea agreement for discovery and litigation purposes during the state trial. Participant #1 testified to the details of his plea agreement and cooperation with the federal government during the state trial and was thoroughly cross-examined by defense counsel for both defendants Piekarsky and Donchak.

In order to be constitutionally valid, an indictment must fairly inform the defendant of the charges against him and be sufficiently clear to bar subsequent prosecutions for the same conduct. *United States v. Resendiz-Ponce,* 549 U.S. 102, 108 (2007); *see also United States v. Hamling*, 418 U.S. 87, 117 (1974). Rule 7(c)(1) of the Federal Rules of Criminal Procedure demands only that an indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." While the Supreme Court, has found that there are exceptional occasions where an indictment must be pled with greater specificity, such as when the definition of an offense includes generic terms, the type of detailed pleading suggested by the defendants is neither contemplated nor required by the Federal Rules of Criminal Procedure. *Russell v. United States*, 369 U.S. 749, 765 (1962), *see also Resendiz-Ponce* at 109.

**A.  Count I - The Law Does Not Require that the Indictment Allege the Defendants' Knowledge Regarding Occupancy of a Home or Other Dwelling.**

Count One of the Indictment charges both defendants with violating 42 U.S.C. § 3631, which is part of the Fair Housing Act, and makes it a crime to interfere by force or threat of force, because of race, with a person's occupancy of a dwelling. "The language of the Act is broad and inclusive." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972). Arguably, "occupancy" is the broadest of the housing rights protected by the Act.

Consider, for example, the Ninth Circuit's interpretation of the term "occupancy" in its decision in *United States v. Gilbert*, 813 F.2d 1523 (9th Cir. 1987). There, the district court had dismissed with prejudice an indictment pursuant to Section 3631 for failing to state an offense where a defendant had mailed racially derogatory and threatening correspondence to the director of an adoption agency that placed Black and Asian children in homes in Kootenai County, Idaho.

The district court reasoned that "adoption efforts focus on placement of a child with a family and not on placement of a child in a dwelling." The Ninth Circuit reversed, holding that the terms "dwelling" and "occupation" had traditionally been afforded a broad interpretation. *Id* at 1527-1528. The Court held that "it is unnecessary for a dwelling to be in existence or occupied" and that "the occupation of a dwelling does not need to be permanent or associated with property rights." *Id.* at 1528.

Applying the *Gilbert* reasoning here, it is clear that the Indictment need not have alleged that either defendant had knowledge that "Luis Ramirez occupied a home or other dwelling in Shenandoah, Pennsylvania." In General Allegation # 3 of the Indictment, the Government has alleged that:

> "On or about July 12, 2008, at approximately 11:30 pm, a group of six males known to the Grand Jury, including defendants DERRICK DONCHAK, BRANDON PIEKARSKY, Participant # 1, and Participant # 2, confronted L.R., a Latino male, in a public park, and assaulted L.R. on a public street by striking and kicking him while members of the group yelled racial slurs at L.R., such as "Spic" and "Fucking Spic", and screamed: "Go Back to Mexico" and "Tell your fucking Mexican friends to get the fuck out of Shenandoah."

The plain meaning of the language used by the assailants was designed to notify Mr. Ramirez and other Latinos that they should be intimidated from living or staying anywhere in Shenandoah, activities that clearly fall within the scope of the term "occupancy." Similarly, because this very language is presented in the Indictment, in addition to the specific language of the statute, the defendants are made fully aware of all the elements of the crime for which they have been charged. *See U.S. v. Agostino, 132 F.3d 1183, 1189 ( 7th Cir. 1997)* ("Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words

expressly set forth all the elements necessary to constitute the offense intended to be punished.").

Nothing more is required.

**B.      Counts 2, 3 and 4 - The Law Does Not Require That the Indictment Allege the Defendant's Knowledge That the Investigation Was a Matter Within the Jurisdiction of the Federal Bureau of Investigation or that He Acted In Contemplation of Such an Investigation.**

Counts Two, Three and Four of the Indictment charge defendant Donchak with offenses

involving obstruction of justice under 18 U.S.C. § 1519.  In their brief, the defendants allege that

"it is necessary to show that an official proceeding was foreseen or in contemplation by the

defendant." (Def. Brief in Support at 5.)  Additionally, the defendants allege that there must be

"some nexus between the alleged obstructive conduct and an official proceeding under 18 U.S.C.

§ 1519.  (Def. Brief in Support at 5.)  They are mistaken on both counts.  Section 1519 requires

that the Government prove that defendant Donchak's obstructive conduct was done "knowingly"

and not as the result of mistake or accident.  Furthermore, the Government must prove that a

federal agency had jurisdiction to investigate a violation of 42 U.S.C. §3631, which was the

subject of defendants' obstructive conduct.  The Government need not prove, however, that a

federal investigation into the racially-motivated beating death of Mr. Ramirez had begun or that

the defendants had actual knowledge that the FBI has jurisdiction over federal civil rights

violations.  Accordingly, the Indictment is sufficient as presented.

**1.      Decisional authority and legislative history establishes that the Government need not prove knowledge of the investigation under 18 U.S.C. § 1519.**

Courts have rejected the argument that the Government must prove that a defendant

actually knew of, or anticipated, a federal investigation in order to establish a violation of Section

1519.  *Ionia Management S.A.*, 526 F.Supp.2d 319, 329 (D. CT 2007);  *United States v. Jho*, 465 F.Supp.2d 618, 636 (E.D.Tex. 2006) (stressing that legislative history indicates that Section 1519 was drafted, "to avoid the requirement that the defendant know about the proceeding against him").  This reflects the longstanding principle that "the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute." *United States v. Feola,* 420 U.S. 671, 677 n. 9 (1975) (statute criminalizing assault on federal officers contains no requirement that defendant know the assaulted officer was employed by federal government).

### 2.    *Arthur Anderson* **and** *Aguilar* **are inapposite.**

In support of their arguments, the defendants cite the Supreme Court's opinions in *Arthur Andersen LLP v. United States,* 544 U.S. 696 (2005) and *United States v. Aguilar*, 515 U.S. 593 (1995).   However, those decisions do not control the issue presented here.  First, neither case addressed 18 U.S.C. § 1519.  *Arthur Anderson* addressed 18 U.S.C. § 1512(b), while *Aguilar* addressed the requirements of 18 U.S.C. § 1503.   In *Arthur Anderson*, the Supreme Court reversed a corporation's conviction under 18 U.S.C. § 1512(b)(2)(A) and (B) for corruptly persuading its employees to withhold testimony and documents from "an official proceeding," and for destroying documents and other records with intent to impair their integrity or availability for use in "an official proceeding." *See Arthur Andersen*, 544 U.S. at 702.  In reaching this decision, the Supreme Court stressed that the conduct at issue, persuading someone to destroy documents pursuant to a routine document destruction policy, was "not inherently malign," and therefore not necessarily "corrupt." *Arthur Andersen*, 544 U.S. at 703-04 (noting that document retention policies are "common in business").  Although, the Supreme Court found that the trial

10

court's instructions could have led the jury to believe that it did not have to find "any nexus

between the persuasion to destroy documents and any particular proceeding," *Arthur Andersen*

contains no sweeping rule that a heightened jurisdictional intent requirement be read into all

federal obstruction statutes. *Id.* at 707 (internal quotation and alteration omitted). At least three

federal circuit courts have recognized that *Arthur Andersen's* nexus requirement is limited to §

1512(b)(2) and similarly worded statutes, and that its holding does not apply to other obstruction

provisions, such as Section 1519. *See United States v. Harris*, 498 F.3d 278, 288 (4th Cir. 2007);

*United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir. 2006); *United Stats. v. Byrne*, 435 F.3d

16, 24 (1st Cir. 2006). Accordingly, the *Arthur Anderson* holding is inapposite to Section 1519,

which is more broadly worded than Section 1512(b)(2).[4]

    *Aguilar* has even less application here than *Arthur Anderson*. *Aguilar* stands for the

proposition that the Government must establish a "relationship in time, causation, or logic"

between a federal investigation and conduct charged under Section 1503. However, by enacting

Section 1519, Congress expressly sought to avoid the narrow and technical application of Section

1503 set forth in the *Aguilar* case. As noted in the Senate Report:

> Other provisions, such as 18 U.S.C. § 1503, have been
> narrowly interpreted by courts, including the Supreme

---

[4]     The routine shredding of documents at issue in *Arthur Andersen* was a business practice consistent with wholly innocent conduct, whereas conspiring to make false entries in police reports, providing false statements to be recorded in police reports, and destroying evidence, as alleged in Counts Two, Three and Four of the Indictment, are acts which are clearly wrong in and of themselves. *Arthur Andersen's* paramount concern was that innocent conduct should not be criminalized. Such concerns simply have no force when applied to the facts of this case. *See Untied States v. Aguilar*, 242 Fed. Appx. 239, 245 (5th Cir. 2007) (unpublished) (affirming conviction despite argument that jury instructions mirrored those rejected in *Andersen* when the defendant had not explained how his asking a witness to make a false statement could have been innocent").

> Court in *United States v. Aguilar*, 115 S. Ct. 593 (1995), to
> apply only to situations where the obstruction of justice can
> be closely tied to a pending judicial proceeding.… In short,
> the current laws regarding destruction of evidence are full
> of ambiguities and technical limitations that should be
> corrected. This provision is meant to accomplish those
> ends. Section 1519 is meant to apply broadly to any acts to
> destroy or fabricate physical evidence so long as they are
> done with the intent to obstruct, impede or influence the
> investigation or proper administration of any matter, and
> such matter is within the jurisdiction of an agency of the
> United States, or such acts done either in relation to or in
> contemplation of such a matter or investigation.… It also
> extends to acts done in contemplation of such federal
> matters, so that the timing of the act in relation to the
> beginning of the matter or investigation is also not a bar to
> prosecution. *The intent of the provision is simple; people
> should not be destroying, altering, or falsifying documents
> to obstruct any government function*.

Sen. Rep. No. 146, 107th Cong., 2d Sess. 14-15 (2002) (emphasis added). Clearly, Congress

intended Section 1519 to apply in situations where individuals attempt to hide or destroy

evidence of a crime as soon as it happens, and before it is investigated. It necessarily follows

that the Indictment need not contain an allegation that defendant Donchak had any knowledge

that he was acting "in relation to and in contemplation of a federal investigation."

### 3. Section 1519 does not contain a nexus requirement

Under Section 1519, the terms "in contemplation of" (in other words, in anticipation), or

"in relation to" (in other words with reference to or with regard to) pertain to "any matter within

the jurisdiction of any department or agency of the United States or any case filed under title 11."

*See* 18 U.S.C. § 1519. Because the statute is meant to apply broadly, application of a rigid

"nexus" requirement would contravene the purpose of the statute, as plainly set forth in its

legislative history:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either *in relation to or in contemplation of such a matter or investigation*. This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter. *It is also sufficient that the act is done 'in contemplation' of or in relation to a matter or investigation*.

S. Rep. No. 107-146, at 14-15 (2002).

Indictments should be reviewed "on a practical basis and in their entirety, rather than in a hyper technical manner." *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (internal quotations and citations omitted). While the Indictment at issue here is a detailed speaking Indictment, indictments need not exhaustively recount the facts surrounding the crime's commission. As noted by the District Court in *U.S. v. Russell*, "[b]oth 'in relation to'and 'in contemplation of' are terms that are frequently used in criminal statutes and have commonly understood meanings." 639 F. Supp.2d 226, 239 (D.Conn. 2007). Accordingly, a person of ordinary intelligence has fair notice of the type of conduct that is prohibited by the statue.

The defendants' Motion to Dismiss must fail because the Indictment is properly pled.


## II.     THIS FEDERAL PROSECUTION DOES NOT VIOLATE THE DOUBLE JEOPARDY CLAUSE OF THE CONSTITUTION

The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *U.S. Const. Amend. V*  Known as the double jeopardy clause, this provision prohibits both state and federal governments from successively prosecuting

a defendant for the same conduct. *Benton v. Maryland*, 395 U.S. 7854 (1969). However, it is well settled that a "federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one." *United States v. Wheeler*, 435 U.S. 313, 316-17 (1978). *See also Bartkus v. Illinois*, 359 U.S. 121, 132 (1959)("Successive state and federal prosecutions based on the same acts are not in violation of the Fifth Amendment."); *Heath v. Alabama*, 474 U.S. 82 (1985); *Abbate v. United States*, 359 U.S. 187 (1959); *Puerto Rico v. Shell Co.*, 302 U.S. 253 (1937); *United States v. Lanza*, 260 U.S. 377 (1922); *Westfall v. United States*, 274 U.S. 256 (1927); *Grafton v. United States*, 206 U.S. 333 (1907); *Moore v. Illinois*, 14 How. 13 (1852). Under the concept of dual sovereignty, "[w]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offenses.' *Heath* at 437 (internal quotations omitted). Contrary to the defendants' suggestions, the Third Circuit continues to recognize that dual sovereignty remains the law of the land. *See United States v. Wilson*, 413 F.3d 382, 390 (3rd Cir. 2005), *see also United States v. Berry*, 164 F.3d 844 (3d Cir. 1999); *United States v. Pungitore*, 910 F.2d 1084, 1105-1106 (3d Cir. 1990), *cert. denied* 500 U.S. 915 (1991) (the Third Circuit rejecting a claim that a lack of independence between federal and state prosecutions would necessarily result in a double jeopardy violation.) "The 'dual sovereignty' doctrine rests on the premise that, where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interests and neither need yield to the other." *Pungitore*, 910 F.2d at 1105.

The defendants argue that this case qualifies as an "exception" to the dual sovereignty doctrine, and that, as a consequence, the Indictment should be dismissed on double jeopardy

grounds. (Def. Brief in Support at 10). Known as the so-called *Bartkus* exception, the Supreme court implied in *dicta* that the dual sovereignty doctrine announced in *Bartkus* might not apply when a state prosecution was merely "a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution." *Bartkus*, 359 U.S. at 123-124. Though the Third Circuit has recognized the *Bartkus* exception in *dicta*, it has "never applied the exception to overturn a second state or federal prosecution." *See e.g., Berry* at 847; *see also United States v. Bell*, 113 F.3d 1345, 1351 (3d Cir. 1997) (finding that "[t]he dual sovereignty doctrine had long foreclosed" defendant's argument against federal prosecution of the same conduct acquitted in state court.) Indeed, the Seventh Circuit has even "questioned whether *Bartkus* truly meant to create such an exception, and [has] uniformly rejected such claims." *United States v. Brock smith*, 9912 F.2d 1363, 1366 (7th Cir. 1993), *cert. denied,* 114 S. Ct. 569 (1993) (recognizing that conversations and cooperative efforts between state and federal investigators are "undeniably legal" and are, in fact, "a welcome innovation" in law enforcement techniques. *)*

Defendants here argue that the Schuylkill District Attorney's prosecution of the defendants was "a mere sham or rehearsal for the instant federal prosecution." (Def. Brief in Support at 10.) The argument fails under the facts and the law.

A. **The State Prosecution Was Not a "Sham and Cover" for a Later Federal Prosecution.**

In their brief, the defendants argue that because federal agents acted "in concert" with local enforcement authorities during the investigations into the death of Luis Ramirez, the state prosecution constituted a single, joint prosecution. This is contrary to existing law. The Supreme Court has recognized and approved of cooperation between state and federal

authorities. *Bartkus*, 359 U.S. at 123.[5] Moreover, the facts of this case make the so-called *Bartkus* exception - if it exists - plainly inapplicable.

The Defendants simply cannot demonstrate that the state prosecution can be considered "a sham and cover" for the federal prosecution. Within their own brief, Defendants acknowledge that while the state investigation was completed and the defendants charged on July 25, 2008, nearly three weeks passed before the Department of Justice met with Participant #1 at a proffer session. (Def. Brief in Support at 7-8.)e

The Government does not deny that it cooperated with local law enforcement after it began investigating the events surrounding the death of Mr. Ramirez, especially the conduct of the local investigation by the BSPD. However, mere cooperation, even cooperation more extensive than that present here, is not a bar to subsequent federal prosecution and the defendants motion must fail. *See United States v. Coonan*, 983 F.2d 1553, 1563 (2d Cir. 1991) (state prosecution not a sham despite cooperation and coordination between federal and state authorities), *cert. denied*, 112 S. Ct. 1486 (1992); *United States v. Brocksmith*, *supra*, 991 F.2d at 1366 (conversations and cooperative efforts between federal and state authorities not only legal

---

[5] In the *Bartkus* case itself, the defendant had been tried by the federal government for a bank robbery and acquitted. Following the acquittal, an Illinois grand jury indicted the defendant using facts substantially similar to the federal indictment. The FBI agent who had conducted the investigation on behalf of the federal government turned over to the state all of the evidence he had gathered against the defendant. Additionally, cooperators entered plea agreements with the federal government and testified against the defendant in both the federal and state trials. The cooperators' sentencings were even postponed until after they testified in the subsequent state trial. These facts merely confirmed for the Supreme Court that "federal officials acted in cooperation with state authorities, as is the conventional practice between the sets of prosecutors throughout the country" and the circumstances "[did] not support the claim that the State of Illinois, in bringing the prosecution, was merely a tool of federal authorities." 359 U.S. at 121-123.

but encouraged); *United States v. All Assets of P.S. Automotive Corp.*, 66 F.3d 483, 494 (2d Cir. 1995)("[E]ven significant cooperation between state and federal authorities does not provide a basis for applying the *Bartkus* exception.")

**B.     This Court Should Not Revisit the Doctrine on Successive Prosecutions in the Context of This Case.**

In lieu of demonstrating that the state and federal cooperation were somehow illegal, a high hurdle, indeed, the defendants ask this Court to reject or overturn the controlling precedent concerning successive state and federal prosecutions. (Def. Brief at 11.) To support this proposition, they rely on *dicta* from the Third Circuit's opinions in *Untied States v. Grimes*, 641 F.2d 96 (3d Cir. 1981) and *United States v. Wilson*, 413 F.3d 382 (2005). (Def. Brief in Support at 11.) However, the Third Circuit has repeatedly held, even in *Grimes and Wilson*, that it is not the "proper forum to overturn a legal directive from the Supreme Court." *Grimes*, 641 F.2d at 104 (finding that the Supreme Courts holding in *Wheeler* counseled the Third Circuit's respect of the successive prosecution doctrine); *Wilson*, 413 F.3d at 390(affirming *Grimes); see also Berry*, 164 F.2d at 847, n. 4 (reconsideration of the application of dual sovereignty principles to successive state and federal prosecutions is a matter for the Supreme Court.)

This Court should not depart from firmly established precedent, here, as doing so would hinder significant Federal law enforcement interests. *See Abbate,* 359 U.S. at 195. The purpose of the Fair Housing Act is to "assure every American a full opportunity to obtain housing for himself and his family free from any discrimination on account of race, color, religion, or national origin." H.R. Res. 16340, 90th Cong., 2d Sess., 114 CONG. REC. 8,407 (1968). Protecting this paramount civil right, and all individual civil rights, is a national priority that

cannot be addressed within the confines of a state prosecution. *See* Department of Justice, FY-2003-2008 Strategic Plan § 2.4 (prosecution of civil rights offenses is a national priority). The harms associated with racially-motivated crimes such as the one charged here are detrimental to the nation and our notions of justice. This is especially true in cases where local authorities ignore or actively obstruct investigations of racial violence. Precluding the Government from addressing this and similar crimes could undermine confidence in the entire justice system.

This Court should therefore reject the defendants' invitation to ignore the overwhelming precedent concerning dual prosecutions.

III.    **DEFENDANTS' MOTION IN LIMINE MUST FAIL BECAUSE RACIAL ANIMUS IS A NECESSARY ELEMENT OF PROOF FOR THE CHARGES ALLEGED IN THE INDICTMENT**

In their Motion in Limine, the defendants seek to exclude evidence of behavior, by the defendants that is suggestive of racial animus against members of the Latino community. (Def. Brief in Support at 14-16). Their motion must fail because the probative value of the evidence is substantial and should not be excluded under Rule 403 of the Federal Rules of Evidence. Moreover, evidence of the defendants racial animus is intrinsic evidence of the crimes charged, and therefore, not subject to Rule 404(b) of the Federal Rules of Evidence.

The statute charged here, 42 U.S.C. § 3631, is part of the Fair Housing Act and makes it a crime to interfere by force or threat of force, because of race, with a person's occupancy of a dwelling. The statute, which is intended to effect broad protection against racial discrimination in the exercise of housing rights, provides in pertinent part as follows:

> Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with-
>
> (a) any person because of his race, color, religion, sex or national origin and because he is . . . occupying . . . any dwelling . . .
>
> [shall be guilty of an offense against the United States.]

42 U.S.C. § 3631. Therefore, in order to establish a death resulting felony violation of Section 3631(a), resulting in death, the United States must prove beyond a reasonable doubt: (1) that Piekarsky, Donchak, and their cohorts used or threatened to use force; (2) that the defendants willfully injured, intimidated or interfered with Ramirez, and others or attempted to do so; (3) that the defendants acted because of Ramirez's race; and (4) because he was enjoying a federally protected housing right; and (5) that the offense resulted in Ramirez's death.

Here, specific intent is an element of the charged offense for which the defendants are charged. *See, e.g.*, *United States v. Franklin*, 704 F.2d 1183, 1188 (10th Cir. 1983) (specific intent of a racial motive is an element of 18 U.S.C. § 245 (b) because the statute proscribes willfully injuring "any person because of his race"). Therefore, the Government is required to prove not only that defendants Piekarsky and Donchak used force to injure and intimidate Mr. Ramirez, which resulted in his death, but also, that they did so *because* of his race. Moreover, it is not even necessary for the defendants to have affirmatively raised the issue of intent for it to be an issue in the Government's case, since the crime for which the defendants are charged requires proof of specific intent. *United States v. Franklin*, *supra*, 704 F.2d at 1188; *United States v.*

*Adcock*, 558 F.2d 397, 402 (8th Cir.), *cert. denied*, 434 U.S. 921 (1977) (the prosecution need not await the defendant's denial of intent before offering evidence relevant to that issue).

### A.     The Evidence Challenged by the Defendants is Intrinsic to the Government's Case And Is Not Unfairly Prejudicial

Rule 403 permits the Court to exclude relevant evidence if the probative value of the evidence is **substantially** outweighed by the danger of **unfair** prejudice. Fed.R.Evid. 403(emphasis added). Here, in order to establish a felony violation of Section 3631(a), the Government must prove, beyond a reasonable doubt, that the defendants acted because of Mr. Ramirez's race. Therefore, the evidence challenged by the defendants is intrinsic to the Government's case and is admissible as direct evidence of the charged crimes. Such evidence is not subject to analysis under Rule 404(b). *See United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) ("If evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, it is properly considered intrinsic.") (internal citations omitted). Accordingly, the probative value of the evidence challenged by the defendants is of paramount importance and cannot be outweighed by any potential danger of prejudice to the defendants. Therefore, the defendants' Motion *in Limine* should fail under a 403 analysis.

### B.     The Challenged Evidence is Admissible Under 404(b)

Rule 404(b) provides in pertinent part:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The requirements of Rule 404(b) are not stringent; "[all that is needed is some showing of a proper relevance." *United States v. Ayinde*, 127 Fed.Appx. 587, 589 (3d Cir. 2005) *quoting United States v. Sampson*, 980 F.2d 883, 888 (3d Cir.1992) (emphasis in original).  The Third Circuit applies a three-part test, established by the Supreme Court, for determining whether other crimes evidence should be admitted: (1) the other crimes evidence must have a proper purpose as set forth in Rule 404(b); (2) the proffered evidence must be relevant; and (3) its probative value must outweigh its potential for unfair prejudice. *United States v. Kellogg*, 510 F.3d 188, 199 n. 10 (3d Cir.2007)  (citing *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).  Here, evidence of the defendants' racist behavior, views and speech is necessary to show their motive and intent in committing the charged offenses.  Where defendants are charged with a racially motivated crime, evidence of their racist views, behavior, and speech are clearly relevant and admissible to show discriminatory purpose and intent.  *See United States v. Pospisil*, 186 F.3d 1023 (8th Cir, 1999) (trial court did not abuse discretion by denying severance where government properly introduced evidence that codefendant abused his ex-girlfriend and owned a sign with the phrase "Official Runnin' Nigger Target" in order to demonstrate cross-burning was racially motivated); *United States v. Dunnaway*, 88 F.3d 617 (8th Cir. 1996) (evidence that white defendant did not like black people, commonly used racial epithets when referring to blacks, and believed interracial relationships were wrong was admissible in prosecution for violation of 18 U.S.C. § 245); *O'Neal v. Delo*, 44 F.3d 655, 661 (8th Cir.), *cert. denied*, 516 U.S. 843 (1995) (question of racial animus as a motive for victim's murder was an issue in the trial and therefore defendant's membership in the Aryan Brotherhood was relevant); *United States v. Price*, 464 F.2d 1217 (8th Cir. 1972) (use of vulgar expletives and direct racial slurs by defendant admitted

to show specific intent to violate 18 U.S.C. § 245).  Accordingly, even under a 404(b) analysis, the defendants' Motion *in Limine* must fail.[6]

## IV.   THE FEDERAL RULES OF CRIMINAL PROCEDURE DO NOT PERMIT THE TYPE OF DISCOVERY THAT THE DEFENDANTS REQUEST.

In their Motion to Compel Discovery, the defendants suggest that Fed. R. Crim. P. Rule 16 and Rule 26.2 allow for discovery of the material listed within their motion.  (Def. Brief in Support and 17-19).  They are clearly wrong.  Rule 26.2 is concerned only with the production of witness statements and clearly provides for production of those statements only after a witness has testified on direct examination.  Fed. R. Crim. P. Rule 26.2.  Because the defendants appear to be seeking early production of all *Jencks Act*, 18 U.S.C. § 3500, material in addition to law enforcement reports and grand jury material, their Motion must fail.

### A.   Defendants are not entitled to additional discovery for their *Bartkus* claim.

The defendants contend that production of the requested materials at this stage of litigation will assist them in arguing their double jeopardy claim.  (Def. Brief in Support at 17.) In considering their argument, the Supreme Court's consideration of the issue of discovery within the context of a selective prosecution claim is instructive.  In  *U.S. v. Armstrong*, 517 U.S. 456 (1996), the defendant argued that he was entitled to documents that discussed the Government's prosecution strategy because they were "material" to the defendant's selective prosecution claim.

---

[6]  Counsel for defendant Donchak complains that he has not received adequate information regarding an incident which occurred on March 20, 2008,  described in detail in materials already disclosed to the defense.  (Defs. Brief at 18.).  While attempting to categorize the incident as 404(b) evidence, defendant ignores that Rule 404(b) requires the government to disclose only the "general nature" of such evidence and its intended use, which he clearly grasps.

Specifically, he argued that he was entitled to the information under Rule 16 applied because any claim that "results in nonconviction," if successful, constituted a "defense" for the purposes of that rule. The Court determined that "in the context of Rule 16 'the defendant's defense means the defendant's response to the Government's case in chief." *Id.* At 463. As a result, the court held that the defendant was not entitled to discovery for the preparation of his selective prosecution claim.

Similarly, here, the defendants are defendants are not entitled to further discovery under either Fed. R. Crim. P. Rule 26.2 or Rule 16. In order for the defendants to obtain discovery on their double jeopardy claim, they must first make a colorable showing that Schuylkill County DA's prosecution was a sham. *See U.S. v. Heidicke*, 900 F.2d 1155, 1159-1160 (7th Cir. 1990) (to compel discovery on a claim of double jeopardy, the defendant must show a colorable basis for the claim). "[Courts] must balance the government's interest in protection from abusive discovery versus [defendants] need for facts that are almost solely in control of the prosecutor." *Id.* At 160. As outlined in detail above, the defendants have not raised a colorable basis for their alleged *Bartkus* exception claims. Accordingly, the defendants are not entitled to further discovery on this issue.

**B.** **The Court should resist the defendants efforts to obtain early disclosure of *Jenks* material.**

The defendants' request for further discovery concerning the *Bartkus* exception and the incident of March 20, 2008, is nothing more than an attempt to obtain early disclosure of *Jenks* Act material.[7] However, the Third Circuit in *United States v. Murphy*, 569 F.2d 771, 773 (3d

---

[7] While alleging that "it is impossible" for the defense to conduct an investigation into the incident involving defendant Donchak on March 20, 2008, defendant is merely attempting to

Cir. 1978), stated that "[t]he blunt command of the statute [*Jencks Act*] together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying the District Courts the power to compel production of the statements of Government witnesses until conclusion of direct examination at the trial. Trial in this context means a proceeding being conducted for the purpose of determining guilt or innocence." While this holding has been expanded by Rule 26.2 to include disclosure of *Jencks* material at certain pre-trial and post-trial hearings,[8] the guiding principle remains the same: There is no authority by which courts can order the Government to provide *Jencks Act* statements prior to the time a witness has testified on direct examination at trial. *See United States v. Hill,* 976 F.2d 132, 140 (3d Cir. 1992) (Jencks Act disclosure must be made after each witness testifies); *see also United States v. Litman*, 547 F. Supp. 645, 652 (W.D. Pa. 1982).

The Defendants seek disclosure of grand jury materials, including transcripts, minutes, and the names and addresses of all witnesses appearing before the grand jury. (Def. Brief in Support at 17-18.) They are not entitled to this information at this stage of the litigation. First, the *Jencks Act* does not require disclosure of grand jury transcripts of any individual who is not called as a witness at trial; in fact, the Act specifically excludes such materials from its coverage.

---

shift the responsibility for his own investigation onto the government. It is "firmly established" that "a defendant is entitled neither to wholesale discovery of the Government's evidence . . . nor to a list of the Government's prospective witnesses . . . ." *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1971), *cert. denied*, 405 U.S. 936 (1972). *Accord United States v. Eufrasio*, 935 F.2d 553, 575 (3d Cir.), *cert. denied*, 502 U.S. 925 (1991); *United States v. LBS Bank-New York, Inc.,* 757 F. Supp. 496, 507 (E.D. Pa. 1990); *United States v. Peifer*, 474 F. Supp. 498, 501 (E.D. Pa. 1979), *aff'd mem.*, 615 F.2d 1354 (3d Cir.), *cert. denied*, 446 U.S. 940 (1980).

[8] *See , e.g.*, *United States v. Cummings*, 400 F. Supp. 2d 822, 829 (W.D. Pa. 2005) (recognizing that *Murphy* had been superseded by rule).

18 U.S.C. § 3500(a).  Moreover, a party seeking disclosure of grand jury material has the burden

of demonstrating a particularized need.  *United States v. Sells Eng'g Inc.*, 463 U.S. 418, 442-44

(1983).  A particularized need is not shown by a mere request.  *United States v. Barry*, 71 F.3d

1269, 1274 (7th Cir. 1995); *United States v. Scrimgeour*, 636 F.2d 1019, 1025 (5th Cir. 1981);

*U.K. v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001).  Here, the defendants have not made

the proper showing of need, therefore, their request must be denied.

The Government will produce any witnesses' transcripts, in a timely fashion, if and when

they become *Jencks* material or disclosure thereof would not otherwise violate grand jury secrecy

rules.  Fed.R.Crim.P. 6(e).[9]  Such statements will be produced by the Government if they contain

*Brady* material, either exculpatory to the defendants or which would tend to impeach other

Government witnesses, as the Government is obliged to do.  *See generally*,  *Kyles v. Whitley*, 514

U.S. 419 (1995); *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994).

### C.      The Government has complied with its obligations under *Brady v. Maryland*.

The Government recognizes an affirmative duty under *Brady* to reveal evidence

exculpatory to the defendants.  However, the duty arises only if the exculpatory evidence is

material.  *See Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Higgs*, 713 F.2d 39, 42-43

(3d Cir. 1983); *United States v. Gengler*, 574 F.2d 730, 735 (3d Cir. 1978).  Although courts

have used different terminologies to define "materiality," the current formulation employed by

the Supreme Court is that: "evidence is material only if there is a reasonable probability that, had

---

[9]  Defendants request a list of all grand jury transcripts provided by the Government to
Schuylkill County law enforcement authorities.  (Defs. Brief at 17.)  Just as defendants are not
presently entitled to such materials, neither were the Schuylkill County authorities.  None were
ever provided.

the evidence been disclosed to the defense, the result of the proceeding would have been different . . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987), *citing United States v. Bagley*, 473 U.S. 667, 682 (1985). *Accord United States v. Pflaumer*, 774 F.2d 1224, 1230 (3d Cir. 1985).

*Brady* does not mandate open file discovery. The Government need not disclose: (1) neutral, irrelevant, speculative, or inculpatory evidence; (2) evidence available to the defense from other sources; (3) evidence the defense already possesses; (4) evidence that the prosecutor could not reasonably be imputed to have knowledge of or control over. *See, e.g., United States v. Jackson*, 649 F.2d 967, 972 (3d Cir. 1981) (irrelevant evidence not *Brady*); *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989) (neutral evidence is not exculpatory); *United States v. Dillman*, 15 F.3d 384, 390 (5th Cir. 1994) (neutral evidence is not *Brady*); *United States v. Agurs*, 427 U.S. 97, 109-110 (1976) (speculation that government's files may contain exculpatory evidence insufficient to require disclosure); *DeMartino v. Weidenburner*, 616 F.2d 708, 712-13 (3d Cir. 1980) (inculpatory evidence does not require disclosure); *United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir. 1991) (no *Brady* violation where defendant, using reasonable diligence, could have obtained the information); *United States v. Dunn*, 851 F.2d 1099, 1101 (8th Cir. 1988) (government has no affirmative duty to discover potentially exculpatory information which it neither possessed nor of which it was aware).

The Government is further aware that *Brady* also requires the disclosure of information that could be used to impeach Government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Third Circuit, in *United States v. Higgs*, 713 F.2d at 44, held that due process requires only that *Brady* material be disclosed to the defense "in time for its effective use at trial."

With respect to impeachment evidence -- evidence that might be used by the defense on cross-examination to challenge the credibility of a government witness -- the *Higgs* court held that the defendant's "right to a fair trial will be fully protected if disclosure is made the day that the witness testifies." *Id*.

The defendants are not entitled to search the Government's files for *Brady* material simply on the speculation that such material may exist. *United States v. American Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 202 (3d Cir. 1970). Accordingly, their Motion to compel should be denied.

### D. Present and Future Disclosure of Evidentiary Material

Since January 7, 2010, the Government has made available to the defendants expansive discovery materials. The bulk of these materials were duplicated with copies provided to the defendants. Over 2,300 pages of discovery have been turned over, including 1,160 pages of the state trial transcript and 250 pages of the state preliminary hearing transcript. Defendants have received at least 6 compacts discs containing jail call recordings, 911 recordings, transcripts, Schuylkill County DA and BSPD reports, complaint reports, pictures of defendants, pictures of the crime scene, autopsy pictures and reports, medical reports, statements, and police training documents. In short, thousands of pages containing hundreds of documents, photographs and related materials have been made available to the defendants in discovery.

The Government has reviewed its files and has produced the material to which the defendant is entitled under Fed.R.Crim.P. 16, *Brady/Giglio* and their progeny, and the *Jencks Act*. In addition to the material which has been and will continue to be provided, the

27

Government recognizes its continuing obligations under *Brady/Jenks/Giglio* to disclose any exculpatory evidence which may come into the custody and control of the Government in the future.  Moreover, in the interest of full and cooperative disclosure, the Government in this case intends to turn over its *Jencks* material to the defendants at least three days prior to trial along with additional impeachment material, if any, under *Brady/Giglio*.

The defendants' requests, as described in their Joint Motion, are overly broad and encompass information to which they are not entitled or which they have already received. Accordingly, their Motion to Compel must be denied.

## CONCLUSION

For the reasons expressly set forth above, the Government requests that the Court should

deny DEFENDANTS' JOINT PRETRIAL MOTIONS.

<div style="margin-left:50%">

Respectfully submitted,
THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
United States Department of Justice

/s/ Myesha K. Braden

By:   Myesha K. Braden
Trial Attorney
DC Bar # 461485
Civil Rights Division
Criminal Section
601 D Street, NW
Patrick Henry Bldg. - 5th Floor
Washington, D.C. 20004
Tel:  202-305-1483
Fax:  202-514-8336
E-mail: Myesha.Braden@usdoj.gov

Eric Gibson
Trial Attorney
Pennsylvania Bar # 76702
Civil Rights Division
Criminal Section
601 D Street, NW
Patrick Henry Bldg. - 5th Floor
Washington, D.C. 20004
Tel.  202.353.7425
Fax:  202-514-8336
E-mail: Eric.Gibson@crt.usdoj.gov

</div>

Dated: June 2, 2010          Counsel for the United States

## CERTIFICATE OF COMPLIANCE

I, Myesha K. Braden, hereby certify that the GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT PRETRIAL MOTIONS does not conform to local rules, in that it contains 28 pages and 8, 279 words, but is submitted in the interest of judicial economy and upon permission from chambers of the Court.

/s/ Myesha K. Braden
Myesha K. Braden

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT PRETRIAL MOTIONS, was sent, by electronic filing and/or first class, postage prepaid mail, to:

James A. Swetz, Esquire
Cramer, Swetz & McManus, P.C.
711 Sarah Street
Stroudsburg, PA 18360

Counsel for defendant Brandon Piekarsky

William A. Fetterhoff, Esq.
Fetterhoff and Zilli
218 Pine Street
P.O. Box 1161
Harrisburg, PA 17108-1161

Counsel for defendant Derrick Donchak

/s/ Eric L. Gibson
ERIC L. GIBSON
Trial Attorney
Criminal Section, Civil Rights Division